In the Matter of Clifford D. HENRY and Henry G. Kalb, Jr., Debtors.

Richard D. ELLENBERG, As Trustee, Plaintiff,

v.

Clifford D. HENRY, Henry G. Kalb, Jr., et al., Defendants.

**Bankruptcy Nos. 81–05251A, 81–00315G. Adv. No. 82–2049A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 16, 1983.

Richard D. Ellenberg, Atlanta, Ga., pro se.

Mary Grace Diehl, Atlanta, Ga., for Cousins Properties, Inc.

Edward Andrews, Atlanta, Ga., for Home Federal Sav. & Loan.

John A. Sherrill, Atlanta, Ga., for Hank T. Kalb.

David P. Hartin, Marietta, Ga., for Cobb County, Tax Com'n.

Roland S. Fung, Atlanta, Ga., for Trust Co. of Ga.

Alfred S. Lurey, Atlanta, Ga., for Roy Head, Mayes & Trust Co.

W.W. Hemingway, Macon, Ga., Executor of Twiggs Estate.

Ross M. Goddard, Jr., Decatur, Ga., for Henry Kalb and Clifford Henry.

F. Allent Thornton, Jr., Decatur, Ga., for Richard and Ella Mae Henry.

Eugene H. Driver, Jr., Atlanta, Ga., for Realty Leasing Corp.

C. Fuller, Gainesville, Ga., for Dunwoody 400 & Amer. Mideast.

B. Knox Dobbins, Cornelia B. Brewer, Atlanta, Ga., for Nat. Bank of Ga.

W. O'Neal Dettmering, Jr., Douglasville, Ga., for Douglas Co. Tax Com'n.

Sid M. Kresses, Atlanta, Ga., for Craftmaster Homes.

Roger W. Moister, Jr., Atlanta, Ga., as trustee for James L. Bentley.

J. Carey Hill, Ellijay, Ga., for Ernest M. Silvers.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

The plaintiff-trustee has moved the Court for a Bankruptcy Rule 8005 stay of this Court's order dated June 14, 1983, as clarified and amended on June 24, 1983, dismissing certain specified counts of plaintiff's adversary complaint by reason of lack of subject matter jurisdiction. The Court previously found that it lacked subject matter jurisdiction over these certain counts because of the *Northern Pipeline* decision, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and despite the so-called Emergency Local Rule.

The said motion came on regularly for hearing, and the Court heard argument of counsel and received citations of authority, and the Court has considered the record in this adversary proceeding.

### (A). The Stare Decisis Argument [1]

The plaintiff seems to argue, as have other plaintiffs in adversary proceedings in this Court, that, because several Circuit Courts and District Courts in other jurisdictions have already ruled on these issues in favor of the legality of (1) the bankruptcy jurisdiction of the District Court and (2) the Emergency Local Rule, the federal judges in this district should follow such decisions under the principle of *stare decisis*.

■ Such reliance on greater numbers of decisions favoring the Rule ignores the strong legal arguments against (1) bankruptcy jurisdiction in the District Court and (2) its authority to delegate and supervise bankruptcy jurisdiction in the Bankruptcy Court. *Stare decisis* must be rejected where independent legal analysis leads to a conclusion that is contradictory to earlier decisions. In the present circumstances *stare decisis* must be rejected.

■ As pointed out in *Brown v. C & S Bank*, 32 B.R. 590, 10 B.C.D. 1375 (Bkrtcy. N.D.Ga.1983), since August 1, 1983, the effective date of the new national Rules of Bankruptcy Procedure, the Circuit Court and District Court decisions rendered prior thereto, which obviously did not consider these rules, are ineffective authority for the argument that the Emergency Local Rule is superior to the new national rules. *In re Morrissey (Frank v. Arnold)*, 717 F.2d 100, 10 B.C.D. 1398 (CA3, 1983), decided by the Third Circuit, September 15, 1983, accords with *Brown* on the new rules issue, but, of course, is far more persuasive authority for the proposition that the Emergency Rule is not founded on statute and must "yield" to the procedure established by the national Bankruptcy Rules. Thus, *stare decisis* is inapplicable as to pre-August 1, 1983 decisions.

### Jurisdictional Issues

There are two primary questions for courts to determine after *Northern Pipeline* and the promulgation of the controversial Emergency Rule. The first is the legality of the asserted jurisdiction of the District Court. Even if it is concluded that the District Courts have pervasive exercisable bankruptcy jurisdiction, the second primary question is the legality and constitu-

---

1. See 20 Am.Jur.2d Courts §§ 201, 203.

    The principle of *stare decisis* is most frequently applied or discussed with regard to decisions made by a court of last resort of *the* given jurisdiction.

    However, a decision of an intermediate appellate court may have *stare decisis* effect in a trial court, or in an intermediate appellate court, although the *stare decisis* effect is of less force where the decision was rendered by a court other than the highest court of the jurisdiction.

    But as a matter of fact, sometimes the decision of a lower court, not abiding by the rule established in a prior decision of the court of last resort, is, on appeal, vindicated by the court of last resort, in that it affirms the decision of the lower court and thus itself overrules its prior decision.

    The decision of a court of one [jurisdiction] does not have *stare decisis* effect in the court of another [jurisdiction]. (Emphasis supplied.)

tionality of the Emergency Rule. The determination of the legality of the Emergency Rule involves three sub-issues:

(1) Whether the District Court has statutory or other authority over the separate Bankruptcy Court to conscript independent Bankruptcy Judges as pseudo-special masters in the face of the statutory role of Bankruptcy Judges under §§ 201, 404, 405 and 406 of the Reform Act.

(2) If so, whether the District Court has the legal authority to ordain the new adjudicatory system to the broad extent provided in the Rule in the face of the Bankruptcy Reform Act, the Federal Rules of Civil Procedure and the Bankruptcy Rules. *South Portland Shipyard, infra; Romeo Roy, infra; Morrissey, supra.*

(3) If so, whether non-Article III Bankruptcy judges can constitutionally exercise the extent of the judicial responsibilities delegated under the Rule. *Northern Pipeline, supra; South Portland Shipyard, infra; Romeo Roy, infra.*

While the several Article III decisions rendered prior to August 1, 1983, and cited as the basis for the application of *stare decisis* found it easy to invoke the inherent power of § 1334 or § 1471(a) and (b), 28 U.S.C., to give bankruptcy jurisdiction to the District Courts, none of them have managed to discuss or deal with the first sub-issue, i.e., the statutory authority of the District Courts to seize the mechanism and personnel of the separate and independent Bankruptcy Courts and to delegate jurisdiction and supervise the Bankruptcy Judges as pseudo-special masters. Some courts, just as easily and without dealing with sub-issue one, have found the Emergency Rule valid. There is no authority for the independent District Court trial court to assume control or authority of the bankruptcy trial court made separate and independent after October 1, 1979, under §§ 404 and 405 of the Reform Act. On this one point, there is no appellate authority at all. Nor have the Circuit Courts dealt with the scope of the Rule. *See Seven Springs*, fn. 24, *infra*, ¶ VIII. Further, the legal

analysis of some decisions is either omitted as in the Fifth Circuit's *Braniff* decision, *In re Braniff Airways, Inc.*, 700 F.2d 214, 10 B.C.D. 418 (CA5, 1983), or fuzzy and unclear as to the three sub-issues above mentioned.

Moreover, the doctrine of *stare decisis* should not be so stringently applied in matters of threshold federal jurisdiction such as the current serious national issue of constitutional bankruptcy trial jurisdiction in the face of disputed readings of *Northern Pipeline*. The late Justice Logan Bleckley, who served on the Supreme Court of Georgia in the late 1800's, commented on the application of the doctrine of *stare decisis* in his decision in *Ellison v. Georgia Railroad and Banking Co.*, 87 Ga. 691, 13 S.E. 809 (1891). After noting that the doctrine is so quickly adhered to by courts "not only [as] a canon of the public good, but a law of self-preservation," he concluded that:

> [m]inor errors, even if quite obvious, or important errors if their existence be fairly doubtful, may be adhered to and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction, is to correct it. When an error of this magnitude and which moves in so wide an orbit competes with truth and the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not *stare decisis*, but *Fiat justitia ruat coelum.**

---

* *Fiat justitia ruat coelum:* "Let justice be done though the heavens fall asunder."

■ The doctrine of *stare decisis* then, is not an immutable principle. Under the Bankruptcy Reform Act, the reasoning of some earlier decisions has been rejected by more mature reflection upon the workings and interrelationships of the Code. Instead of allowing *stare decisis* to usurp legal analysis and perpetuate early errors, Judges have been willing to reconsider and

rethink legal issues. The highest Court has often affirmed such reconsideration.[2]

■ This court views the application of *stare decisis* to the instant proceeding as inappropriate. This Court considers the legal reasoning of those decisions which approve of District Court jurisdiction over bankruptcy matters to be deficient. In the current circumstances, then, this Court does not adopt the non-binding decisions of other jurisdictions. *In re Matlock Trailer Corp.*, 27 B.R. 311, 10 B.C.D. 34 (Bkrtcy.M.D.Tenn., 1983) rev'd, 27 B.R. 318, 10 B.C.D. 372 (D.C.M.D.Tenn., 1983); *Northland Point Partners, infra.*

No non-judicial national bankruptcy scholar known to this judge has found bankruptcy jurisdiction or Emergency Rule power in the District Court to be constitutional. The tendency to rubberstamp the Judicial Conference leadership in this matter has subsided. The emerging recent decisions are contrary to the early Article III court decisions which approved District Court jurisdiction and the Emergency Rule. There are recent impressive Circuit Court decisions. *See Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 712 F.2d 1305 (CA9, 1983); *In re Morrissey*, 717 F.2d 100, 10 B.C.D. 1398 (CA3, 1983). The *stare decisis* argument also ignores the Eleventh Circuit statement in *In re International Horizons*, 689 F.2d 996, 1000 (CA11, 1982), which indicated that the Eleventh Circuit may find that the District Court has only appellate jurisdiction over bankruptcy matters pursuant to new 28 U.S.C. § 1334 (1978). Additionally, the District Court in Maine, *In re South Portland Shipyard and Marine Railways, Corp.*, 32 B.R. 1012, 10 B.C.D. 1385 (D.C.D. Me., 1983); *In re Romeo Roy v. Northern National Bank, et al.*, 32 B.R. 1008, 10 B.C.D. 1392 (D.C., D.Me., 1983); and the District Court in Connecticut *Pine Associates, Inc. v. The Aetna Casualty and Surety Co., et al.*, 36 B.R. 878 (D.C., Conn. 1983) have also added their weight to those who find District Court jurisdiction of bankruptcy matters under any of the rationalizations unconstitutional.

#### (B). The Likelihood of Reversal Argument

Akin to the *stare decisis* argument is plaintiff's contention that a Rule 8005 stay should be granted because there is a likelihood the prior order of dismissal for lack of subject matter jurisdiction will be reversed. This Court finds nothing in Bankruptcy Rule 8005 which supports such argument as a ground for granting an appellate stay. It may be assumed plaintiff is drawing the "likelihood of reversal" analogy from Rule 65 of F.R.Civ.P. Plaintiff renews the arguments that all of the Circuit Courts of Appeal and most of the District Courts which have been confronted with the issue have thus far approved (1) the asserted bankruptcy jurisdiction of the District Courts and (2) the legality and constitutionality of the Judicial Conference Emergency District Court Local Rule. Thus, plaintiff urges that the "batting average" of prior Article III court decisions on these jurisdictional questions indicate that the District Court for the Northern District of Georgia, the Eleventh Circuit, and the Supreme Court will follow the majority of Article III courts and reverse the prior order of this Court.

As with the *stare decisis* argument, to decide by preponderance of numbers is to reject the impartial, studious analysis by independent judges applying jurisdictional principles to the merits of the issues inherent in *Northern Pipeline* and the Emergency Rule:

(1) On August 5, 1983, the Ninth Circuit in *Pacemaker, supra,* ruled that judicial performance by non-Article III judges may not substitute for Article III jurisdiction.

(2) On August 14, 1983, District Judge Gene Carter in *South Portland, supra,* and *Romeo Roy, supra,* ruled the Emergency Rule illegal and unconstitutional.

(3) On September 15, 1983, the Third Circuit in *Morrissey, supra,* ruled that

---

**2.** *U.S. v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

the new August 1, 1983, national Bankruptcy Rules' standard of review for appeals from the Bankruptcy Court override and supercede the standard of review provided in the Emergency Rule. The decision stands for the proposition that the Emergency Local Rule "must yield" to the statutory national Rules of Bankruptcy Procedure.

(4) On September 28, 1983, District Judge Cabranes in *Pine Associates, supra,* ruled that after *Northern Pipeline* neither the District Court nor Bankruptcy Court has bankruptcy jurisdiction. Judge Cabranes concluded that in the absence of District Court bankruptcy jurisdiction the legality and constitutionality of the Emergency Rule need not be considered.

(5) The Eleventh Circuit in *International Horizons, supra,* appears inclined to find that the District Court has only appellate bankruptcy jurisdiction.

These recent announcements of Article III courts indicate an erosion of the prior "batting average". This may mean that the bandwagon favoring District Court jurisdiction, begun with District Judge De-Mascio's opinion, *In the matter of Northland Point Partners,* 26 B.R. 860, 9 B.C.D. 1412 (D.C.E.D.Mich., 1983), 26 B.R. 1019, 10 B.C.D. 95 (D.C.E.D.Mich., 1983), rendered thirteen days after the effective date of the Emergency Rule, has subsided.[3] Whatever the numbers of opinions which have subscribed to District Court jurisdiction and/or endorsed the Emergency Rule, the emerging scholarship sampled above concerning bankruptcy jurisdiction by Article III courts now questions the original acceptance of the legality of the District Court's jurisdiction over bankruptcy matters.

*(C). There is No Bankruptcy Court or District Court Trial Jurisdiction After Northern Pipeline*

The instant adversary proceeding involves alleged fraud of the debtor in the conveyance of certain real property to the wife of the debtor during the one year preceding the filing of the debtor's Title 11 involuntary petition. The Court found in the order on appeal and now reiterates that the facts and issues of this adversary proceeding as to the exercise of bankruptcy jurisdiction of this non-Article III judge pursuant to § 241(a) of the Bankruptcy Reform Act of 1978 are squarely within the decision of the Supreme Court of the United States in *Northern Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

*(1) The District Court of Connecticut Holds the District Court Has no Bankruptcy Jurisdiction*

The opinion of District Judge Cabranes of the District of Connecticut, *Pine Associates, supra,* held that all of § 241(a) was declared unconstitutional by *Northern Pipeline.* The decision illustrates that two separate inquiries are required by challenges to the jurisdiction conferred on the Bankruptcy Judges under the terms of the Emergency Rule. The first consideration is the validity of bankruptcy trial jurisdiction of the District Courts, unexpressed, but assumed under the Emergency Rule. Full bankruptcy jurisdiction, of course, must co-exist with the power to delegate adjudicatory responsibilities to Bankruptcy Judges. The Article III courts have differed as to what statute confers the Rule-implied bankruptcy jurisdiction, i.e., 28 U.S.C. § 1471 or 28 U.S.C. § 1334. Secondly, as observed in "Jurisdictional Issues" above, once that conclusion is reached, the courts must grapple with the statutory basis for the procedure of the Emergency Rule which (1) asserts the authority to reconstitute Bankruptcy Judges as pseudo-special masters to exercise such District Courts' jurisdiction and (2) frames the procedures of District Court—Bankruptcy Judge adjudication of proceedings differ-

---

**3.** District Judge DeMascio, Chairman of the Judicial Conference Committee on Bankruptcy Administration, was one of the two or three final draftsmen of the suggested Emergency Local Rule in September 1982, and proposed the Rule to the Conference.

ently from the procedures provided for in the Bankruptcy Code and Bankruptcy Rules. Most of the Article III courts have dealt only with the basis of District Court bankruptcy jurisdiction and have ignored the other legal issues which surround the problem.

### (2) The District Court of Maine Holds the Emergency Rule is Invalid

District Court Judge Gene Carter in *South Portland, supra,* and *Romeo Roy, supra,* recently ruled the Emergency Rule unconstitutional. He ruled first, however, that the District Court had jurisdiction pursuant to § 1471(a) and (b). He declared that the *Northern Pipeline* decision held only § 1471(c) of Title 28 unconstitutional and left intact all other provisions of § 241(a) of the Reform Act, including § 1471(a) and (b) of Title 28, which on its face literally grants jurisdiction to the District Courts. This approach is fairly typical of the Circuit Courts and District Courts which have held that only subsection (c) of § 1471 under *Northern Pipeline* was unconstitutional.

The rationale urging only the unconstitutionality of § 1471(c) deserves analysis. As have other Article III court decisions, Judge Carter quoted as text for his conclusion a statement of the plurality opinion: "Having concluded the broad grant of jurisdiction *to the Bankruptcy Court* contained in § 241(a) is unconstitutional" .... (Emphasis supplied). 102 S.Ct. at 2880. Placing emphasis on "jurisdiction to the Bankruptcy Court," and apparently assuming that § 1471(c) was the "broad grant" referred to, the Article III court opinions conclude that the Supreme Court declared only § 1471(c) unconstitutional.

Nowhere, in either the quoted sentence or the plurality opinion discussion in *Northern Pipeline,* 102 S.Ct. at 2868–80 and footnotes 35–40, is § 1471(c) cited or referred to as the unconstitutionally "broad grant." Instead, the plurality opinion discusses several of the grants of power to the Bankruptcy Judges, i.e., 28 U.S.C. §§ 1480, 2201, 2256, and 11 U.S.C. § 105.

Additionally, a close reading of footnote 40 reveals that the "single statutory grant of jurisdiction" discussed in the footnote does not refer to § 1471(c) alone. Section 1471(c) *is not alone* in vesting the Bankruptcy Court with jurisdiction. Sections 1471(e), 1478, 1480, and 1481 also confer grants of jurisdiction to the Bankruptcy Court. The only single statutory grant of jurisdiction which vested jurisdiction "over this and all matters related to cases under Title 11 in a single non-Article III court" which footnote 40 refers to is § 241(a).

The logical conclusion, then, is that the plurality was not dealing with the "broad grant of jurisdiction to the Bankruptcy Courts" as contained only in § 1471(c), but rather the broader and more comprehensive grant of jurisdiction of the several provisions contained in § 241(a) "to the Bankruptcy Courts." 102 S.Ct. at 2880. Thus, to reach the conclusions of the prior Article III courts, the phrase "contained in § 241(a)" is essentially ignored. Reference to the Bankruptcy Court jurisdiction pursuant to § 241(a) occurs not only in § 1471(c), but §§ 1471(e), 1478, 1480, and 1481.

The identification of § 1471 rather than § 241(a) in Article III opinions supporting District Court jurisdiction may be the result of misleading paragraphs in the Syllabus to the *Northern Pipeline* decision. Paragraphs (1), (1)(c) and (2) of the Syllabus refer to § 1471 instead of § 241(a) of the plurality's holding, 102 S.Ct. at 2880. Obviously the Syllabus is incorrect and misleading.

This improper substitution of § 1471 for § 241(a) and unwarranted concentration on § 1471(a) and (b) of Title 28 of the Reform Act is the only means of salvaging bankruptcy jurisdiction for the District Court. Unfortunately, it is improper and unwarranted because it completely excludes recognition of the other provisions in § 241(a), namely 28 U.S.C. §§ 1472–1482. Each of these sections specifically refer and apply to the Bankruptcy Court as contrasted with subsections (a) and (b) of § 1471. The same is true of 28 U.S.C. § 1930, with its specific reference to the Bankruptcy Court

of the filing fees to be paid to the Clerk of the Bankruptcy Court and of 28 U.S.C. § 2256 dealing with habeas corpus from the Bankruptcy Court, which were enacted respectively by §§ 246(a) and 250(a), immediately following § 241(a) of the 1978 Reform Act.

The judicial construction that validates subsections (a) and (b) of § 1471 and makes subsection (c) of § 1471 alone unconstitutional is inherently contradictory. The contradictions are the direct result of the District Court's and Bankruptcy Court's concurrent jurisdiction pursuant to the remaining sections of § 241(a), § 1471(a), (b), and §§ 1471(e), 1478, 1480, 1481, respectively. With all of § 241(a) invalid, neither the Bankruptcy Court nor the District Court has any surviving jurisdiction.

### (3) The "§ 1471 Syllogism" Proves That All of § 241(a) Was Declared Unconstitutional

To demonstrate the paradoxes resulting from prior Article III courts' conclusions, let us assume that these decisions are correct in concluding that the Supreme Court declared only § 1471(c) as unconstitutional and that subsections (a) and (b) of § 1471 are viable and grant exercisable bankruptcy jurisdiction to the District Courts.

### SYLLOGISM

*First premise:* Subsection (c) of § 1471 is the "broad jurisdiction" referred to and was the only part of § 241(a) declared invalid by the Supreme Court and subsections (a) and (b) of § 1471 are viable and confer exercisable jurisdiction on the District Courts.

*Second premise:* Thus, all other parts of § 1471 and all other provisions of

§ 241(a) which follow § 1471 are unaffected by *Northern Pipeline.*

*Therefore,* the authority provided in §§ 1471(e), 1478, 1480 and 1481 may be exercised by Bankruptcy Judges.

### (a) 28 U.S.C. § 1471(e) is Alive and Well

Under this analysis the Bankruptcy Judges after *Northern Pipeline* can continue to validly exercise the powers of subsection (e) of § 1471 which grants the Bankruptcy Court "exclusive jurisdiction of all of the property ... of the debtor." Some commentators have suggested that subsection (e) is merely a partial repetition of subsections (a) and (b) because so-called summary jurisdiction is inherent in the grant of subsection (a), (b), and (c) of § 1471. Subsection (e) was not in an early draft of the new Chapter 90 of Title 28 either in S.2266 or H.R.9200 and was added in the October 6, 1977 version which ultimately was enacted.[1] Perhaps this subsection was drafted to clarify the summary/plenary dichotomy present in the prior Bankruptcy Act.

Thus, Bankruptcy Judges have jurisdiction pursuant to subsection (e), unaffected by *Northern Pipeline* (second premise), over actions involving the property of the debtor at the same time the District Court possesses exercisable jurisdiction pursuant to subsections (a) and (b) which includes that jurisdiction. Patently, the jurisdiction of § 1471(a) and (b) in the District Court is concurrent and thus inconsistent with Bankruptcy Judge's "exclusive" jurisdiction derived from subsection (e). Acceptance of the conclusion of premise one and two, that § 1471(c) above is unconstitutional and § 1471(e) remains exercisable by a Bankruptcy Court, then, results in a contradiction.[5]

---

**4.** *See Norton Bankruptcy Law and Practice, Vol. 4, Annotated Legislative History,* p. 1150.

**5.** The plurality responded that the former so-called summary jurisdiction and judicial powers of Bankruptcy Judges had never been declared constitutional and thus should not be assumed so. In hearings before the House Judiciary Committee in December 1977, some witnesses speculated that the summary jurisdiction of Bankruptcy Judges may very well be the exercise of the judicial power of the United States and thus unconstitutional. As pointed out in *Seven Springs, supra,* such summary jurisdiction includes the exercise of the judicial power of the United States and is unconstitutional to Bankruptcy Judges.

#### (b) 28 U.S.C. § 1478 is Alive and Well

Again, following the syllogism outlined above, if § 1471(c) is the only section declared unconstitutional, then § 1478 is not invalid and the Bankruptcy Court continues to have jurisdiction of all causes of action removed to the Bankruptcy Court. The Bankruptcy Court would perhaps not have jurisdiction over causes of action which might be included in the jurisdictional grant of § 1471(c). Nevertheless, under this analysis the Bankruptcy Court certainly would have jurisdiction over removed causes of action which involve subsection (e) jurisdiction. This logic results in the same contradiction demonstrated above.

#### (c) 28 U.S.C. § 1480 is Alive and Well

Again, following the syllogism, if only § 1471(c) is unconstitutional and § 1480 is not invalidated, then Bankruptcy judges could continue to conduct jury trials of causes remaining under valid jurisdiction. Likewise, new Bankruptcy Rule 9015 expressly authorizes jury trials by Bankruptcy Judges. The interim Emergency Rule, enacted prior to the national Rules of Bankruptcy Procedure, prohibits Bankruptcy Judges from presiding over jury trials. Yet, it seems probable that the plurality intended to include the power granted to the Bankruptcy Court pursuant to § 1480 within the "judicial power of the United States" and within its reference to "the broad grant" ... of § 241(a).[5a] The contradiction over the District Court's and Bankruptcy Court's concurrent exercisable jurisdiction emerges again.

#### (d) 28 U.S.C. § 1481 is Alive and Well

Again, using the above syllogism, § 1481, which gives the Bankruptcy Court "powers of a court of equity, law and admiralty," would not be affected by *Northern Pipeline* and would continue to be a grant

of jurisdiction to the Bankruptcy Court. Because the "powers of a Court of equity, law and admiralty" may encompass all or certainly much of the jurisdictional grant under § 1471(a) and (b), this would seem a paradoxical result. Some commentators have viewed § 1471(c) and § 1481 as redundant grants. Surely they are overlapping. Can it be doubted that the powers of § 1481 include "the judicial power of the United States" as described in Article III of the Constitution?

#### (e) Summary of Syllogism

■ The rationale of the prior Article III courts that *Northern Pipeline* declared only subsection (c) of § 1471 unconstitutional yet left subsections (a) and (b) as well as §§ 1471(e), 1478 and 1481 intact is doubtful. It is incongruent to permit both the District Court under § 1471(a) and (b), and the Bankruptcy Court under §§ 1471(e), 1478, 1480 and 1481 to exercise concurrent jurisdiction over matters involving the property of the debtors, removed litigation, jury trials, and equity, law and admiralty. Nor have the prior Article III opinions explained how the District Court trial court can take over another trial court. Nor are decisions which focus on the Emergency Rule as a means for permitting the District Court to exercise bankruptcy jurisdiction any less misguided. If only § 1471(c) is unconstitutional while the residual jurisdiction conferred by § 241(a) on the Bankruptcy Court remains viable, the power conferred under the Emergency Rule to the District Courts is in direct conflict. Statutory provisions, e.g., §§ 1471(e), 1478, 1480 and 1481, which have not been declared unconstitutional, prevail over any Local Rule of jurisdiction or procedure. Therefore, as the Third Circuit held in *Morrissey, supra,* the Emergency

---

**5a.** It is not all clear whether the conduct of jury trials is the exercise of the "judicial power." Jury trials are permitted by U.S. Magistrates [28 U.S.C. § 636(c) (Supp.1983)] and special masters (FRCP 53) and over the years by other non-Article III judicial officers. Such judicial acts may be viewed as only involving rulings on

evidence and the jury charge. On the other hand, the judge may be required to rule on motions for directed verdict, motions for judgment notwithstanding the jury verdict, and the like, which may decide all or a substantial part of the proceeding and such acts may well involve the exercise of the judicial power.

Rule must yield to the valid statute and national rules.

The better analysis of *Northern Pipeline* acknowledges that the plurality meant to and did declare § 241(a) unconstitutional in its entirety. *Ellenburg v. Henry, et al.,* Adv. No. 82–02049A (BC ND Ga, June, 1983); *Seven Springs, supra.* The plurality also concluded that § 241(a) grant to the Bankruptcy Court was non-severable. The concurring opinion agreed with the plurality that the § 241(a) grant was non-severable. Justice White in his dissent found the rejection of all § 241(a) in the plurality and concurring opinions unnecessarily broad. *Brown, supra.*

The Court has held that where the "scheme of the whole is indivisible," the entire provision must fall: "It cannot be separated into parts. It must stand or fall together." *Poindexter v. Greenhow,* 114 U.S. 270, 304–305, 5 S.Ct. 903, 921, 29 L.Ed. 185 (1884). The scheme of § 241(a) was not "so distinctly separable that each [part] can stand alone." *Id.* "To hold otherwise would be to substitute for the law intended by the legislature one they may never have been willing by itself to enact." *Id.,* citing *Trade-Mark Cases,* 100 U.S. 82, 25 L.Ed. 550 (1879).

Footnote 40 of the plurality in *Northern Pipeline,* 102 S.Ct. at 2880, clearly revealed that the Court recognized the non-severable, integrated nature of the package of bankruptcy jurisdiction in § 241(a). Footnote 40 was referencing to § 241(a) rather than § 1471(c) when the Court was discussing the broad non-divisible grant of jurisdiction to the Bankruptcy Courts. Also, in footnote 40, Justice Brennan specifically responded to the Chief Justice's dissent which would authorize transfer of jurisdiction over state law actions to the District Court. Justice Brennan acknowledged that the bankruptcy jurisdiction which was found to be unconstitutional to the non-Article III judges could be easily transferred, as the Chief Justice suggested, to the District Court *by future congressional* statute, but he cautioned that the Reform Act lawmakers clearly refused to do so. Foot-

note 3 recognized that the one court and one set of judges who are the "ultimate repository of the Act's broad jurisdictional grant [are] the bankruptcy courts." 102 S.Ct. at 2862. The *Northern Pipeline* Court was unwilling to "undertake to make, by judicial construction, a law which Congress did not make ... [and] if the matter were now before that body, it would be unwilling to do." *Poindexter, supra,* citing to the *Trademark Cases,* 114 U.S. at 305, 5 S.Ct. at 922.

## CONCLUSION

■ (1) The District Court has no bankruptcy trial jurisdiction. *Pine Associates, supra.*

■ (2) The District Court has no authority over the Bankruptcy Court or Bankruptcy Judges to delegate or withdraw bankruptcy jurisdiction or supervise judicial actions. §§ 201, 403, 404, 405, Bankruptcy Reform Act. *Seven Springs, supra,* ¶ VIII.

■ (3) The adjudicatory procedures established by Emergency Local Rule conflict with existing adjudicatory procedures established by the Bankruptcy Reform Act of 1978, and the August 1, 1983, national Bankruptcy Rules. The Emergency Rule must yield. The power to prescribe the exercise of jurisdiction rests exclusively with the legislative branch. *Northern Pipeline, supra; Morrissey, supra; South Portland Shipyard, supra; Romeo Roy, supra.*

■ (4) The Emergency Local Rule delegates judicial responsibilities to Bankruptcy Judges, including this proceeding, which may not be exercised constitutionally by non-Article III judges. Bankruptcy jurisdiction is Article III power and must be exercised by Article III judges at every stage of the consideration. *Northern Pipeline, supra,* and *Pacemaker, supra.*

For the reasons stated in *Seven Springs, supra,* and for the analysis stated in *Brown, supra,* and for the analysis contained in *Pine Associates, supra,* concerning the several *Northern Pipeline* opinions

and its invalidation of all of § 241(a), and for the reasons stated in *Brown* and *Morrissey* as to the conflict of the Emergency Rule with the national Bankruptcy Rules which became effective August 1, 1983, and for the analysis stated in *Brown* concerning the decision of the Ninth Circuit Court of Appeals in *Pacemaker,* the motion of plaintiff for a Rule 8005 stay is denied.